## STATE vs. CARMINE RUSSO.

*Indictment—Murder First Degree—Verdicts—Homicide—Felonious—Malice—Express Malice—Murder Second Degree— Implied Malice—Use of Deadly Weapon—Presumption of Malice—Manslaughter—Assault—Provocation— Opprobrious Words—Gestures, etc.—Self-defense—Duty to Retreat—Confession—Evidence—Character of Accused—Conflict of Testimony—Reasonable Doubt—Motion for New Trial —Time to Prepare Case—Continuance —Absence of Witness.*

1. Under an indictment for murder of the first degree, the jury may find any of four verdicts, as the evidence shall warrant—murder of the first degree, murder of the second degree, manslaughter or not guilty.

2. Homicide is the killing of one human being by another.

3. Felonious homicide is of three kinds: murder of the first degree, murder of the second degree, and manslaughter.

4. Malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or of the second degree.

5. Malice is a condition of the mind and heart. In the crime of murder the term is not restricted to spite or malevolence toward the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief.

6. In a prosecution for murder, when it is shown that the fatal act was done deliberately or without adequate cause, the law presumes that it was done with malice, and the burden is on the prisoner to show from the evidence, or by inference from the circumstances of the case, that the act was not done with malice.

7. Murder of the first degree is where the killing was done with express malice aforethought, or in perpetrating or attempting to perpetrate a crime punishable with death.

8. Express malice aforethought is where one person kills another with a sedate, deliberate mind and formed design, which formed design

may be manifested in many ways; as, for instance, by lying in wait for the deceased, by antecedent menaces or threats, by a former grudge, ill will, spite, hatred, or malevolence towards the deceased, or other circumstances which disclose the purpose or intention of the accused toward his victim at the time when the crime was committed.

9. The deliberate selection and use of a deadly weapon is a circumstance which, in the absence of satisfactory evidence to the contrary, indicates the existence in the mind of the person committing the act of a deliberate formed design to kill.

10. If when the accused killed the deceased, he deliberately intended so to do, the length of time that said intention existed is immaterial, and the killing under such circumstances would be murder.

11. If the accused had time for thought and thinking but for a moment, did intend to kill, and in fact did kill, it is just the same in legal contemplation as if he had intended it for a length of time. If a design or intention to take life be but the conception of a moment, it is sufficient, and killing under such circumstances is held to be both deliberate and premeditated.

12. Murder of the second degree is where the killing was done with implied malice; that is, where malice is not express, as in murder of the first degree, but is an inference or conclusion of law from facts actually proved.

13. Murder of the second degree is where there is no deliberate mind or formed design to take life, but where the killing was done without provocation, or without sufficient provocation to reduce the offense to manslaughter; as, where the killing was done without design and premeditation, but under the influence of a wicked and depraved heart, or with a cruel and wicked indifference to human life.

14. Where death ensues from an unlawful and cruel act of violence on the part of the slayer, in the absence of adequate or sufficient provocation, the law implies that such act was done maliciously, and the crime is murder of the second degree.

15. Where the killing is shown to have been done with a deadly weapon, it is presumed to have been done maliciously, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused; for the usual and probable consequences of the act are presumed in law to have been intended by the person using the deadly weapon, and in such case great must be the provocation to reduce the killing from murder to manslaughter.

16. Manslaughter is where one person unlawfully kills another without malice; as, for instance, when one in a sudden affray, in the heat of blood, or in a transport of passion, inflicts the mortal wound, without time for reflection or for the passions to cool.

17. While murder proceeds from a wicked and depraved spirit and is characterized by malice, manslaughter results, not from malice, but from unpremeditated and unreflecting passion.

18. No looks or gestures, however insulting, no words, however opprobrious or offensive, can amount to a provocation sufficient to excuse or justify even a slight assault.

19. A slight assault will not excuse the killing of an assailant with a deadly weapon, so as to reduce the offense from the grade of murder to that of manslaughter.

20. The burden of establishing self-defense to the satisfaction of the jury rests upon the accused.

21. In repelling or resisting an assault, no more force may be used than is necessary for the purpose, and if the person assailed use in his defense greater force than is necessary he becomes the aggressor.

22. Although the deceased first attacked the accused and the attack was of such a character as to create in the mind of the accused a reasonable belief that he was in danger of death or great bodily harm, it was his duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power to avoid killing his assailant.

23. No one may take the life of another, even in self-defense, unless there is no other available means of escape from death or great bodily harm.

24. In order to justify or excuse the accused in shooting the deceased it is not sufficient that he at the time believed himself to be in danger of death or great bodily harm at the hands of the deceased; but the circumstances must have been such, in the judgment of the jury, as to justify a reasonable man in such belief, and, further, that there was no reasonable way of avoiding or escaping from such danger except by slaying his assailant.

25. The provocation of another cannot reduce the crime from murder to manslaughter, and such provocation should not be considered in determining the grade of the crime, unless the deceased was present and assisting, aiding or abetting him who caused the provocation.

26. The jury may believe that part of a confession which criminates the accused and reject that which is in his favor, or credit that part in his favor and discard that which is against him, if upon all the evidence they should find sufficient grounds for so doing.

27. Evidence of good character is to be taken in connection with all the other evidence in the case and should be given such weight under all the circumstances of the case as in the judgment of the jury it is entitled to.

28. When the testimony is conflicting the jury should endeavor to reconcile it, if it is possible to do so. If it is not possible to reconcile it, they should give credit to that testimony which they consider most worthy of their belief.

29. In every criminal prosecution the accused is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt.

30.　It is incumbent upon the State to prove beyond a reasonable doubt every material ingredient of the crime charged.

31.　The accused is entitled to the benefit of a reasonable doubt of his guilt, if entertained after carefully and conscientiously considering and weighing all the evidence in the case.

32.　A reasonable doubt is not a mere fanciful, vague, speculative or possible doubt, but a reasonable, substantial doubt remaining in the minds of the jury after a careful consideration of all the evidence; and such a doubt as reasonable, fair-minded and conscientious men would entertain under all the facts and circumstances of the case as shown by the evidence.

33.　In considering any statement made by the accused, the jury should give it such weight as they think it is entitled to, under all the facts and circumstances of the case.

34.　When, at the time of the prisoner's arraignment, his counsel, who had been assigned by the Court, requested and was allowed two weeks to prepare for trial, a new trial will not be granted because longer time for the preparation of the trial was not allowed.

35.　A continuance of the case on the ground of absence of a material witness, was not improperly refused where counsel for the accused made no formal or legal application therefor, but informally asked the Court, before the commencement of the trial, that the case might be continued, stating to the Court that he had not seen the witness or learned where he is, and did not know what would be the nature of his testimony, if his attendance could be secured.

*(February* 17, 1910.)

PENNEWILL, C. J., and WOOLLEY and HASTINGS, J. J., sitting.

*Andrew C. Gray*, Attorney-General, and *Josiah O. Wolcott*, Deputy Attorney-General, for the State.

*Leonard E. Wales* for the prisoner.

At a Court of Oyer and Terminer, in and for New Castle County, beginning February 16th, 1910, the Prisoner Carmine Russo, was put upon trial for murder in the first degree, for the killing of one, William Kidd, at the north west corner of Sixth and Adams Streets, in the City of Wilmington, about three o'clock on Sunday afternoon, January 16th, 1910.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—Carmine Russo, is charged in this indictment with murder of the first degree.

The State contends that Carmine Russo, the prisoner at the bar, on the sixteenth day of January last, without excuse, justification or provocation, deliberately, designedly and with express malice aforethought, shot and killed one William Kidd, while the latter was standing, in company with some other young men, on the north west corner of Sixth and Adams Streets in this City.

The prisoner admits that he shot and killed William Kidd at the time and place mentioned, but insists that it was not done either with express or implied malice, but under great provocation, and with the belief that he was in much danger and about to suffer great bodily harm. He contends that he and another Italian were, just before the shooting, being pursued by a number of small boys , who were throwing snow-balls at them and hitting them; that at the time a number of young men were standing at the corner of Sixth and Adams Streets urging the boys on and encouraging them in their assault upon the prisoner · and his companion, and that some of those young men also threw snow-balls at them; that when the prisoner and his companion walked out to where the young men were standing, some of them drew their revolvers and were about to assault the prisoner and his companion, when he fired the fatal shot; that he did not intend to shoot the deceased or anyone else, but did the shooting when he believed that those men were about to do him great bodily harm.

The State insists that neither the deceased nor anyone in his party had done or said anything to indicate in the· slightest way to the prisoner that they intended to injure or annoy him, but on the contrary, that the deceased was endeavoring to separate the prisoner's companion and one of the deceased's party, when the prisoner seized the deceased by the coat with his left hand and with his right hand drew a revolver from his pocket, and pointing it at the breast of the deceased fired and killed him.

Charge.

Under this indictment you may find any one of four verdicts as the evidence in your judgment shall warrant, viz.: murder of the first degree, as charged in the indictment; murder of the second degree; manslaughter, or not guilty.

It is the duty of the Court to define or explain to you, as clearly as we may, what is murder of the first and second degree.

Homicide is the killing of one human being by another. Felonious homicide is of three kinds; murder of the first degree, murder of the second degree and manslaughter. Malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or of the second degree. Malice is a condition of the mind or heart. As here used this term is not restricted to spite or malevolence toward the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief. Wherever the fatal act is done deliberately or without adequate cause, the law presumes that it was done with malice, and the burden is on the prisoner to show from the evidence, or by inference from the circumstances of the case, that the act was not done with malice.

Murder of the first degree is where the killing was done with express malice aforethought, or in perpetrating or attempting to perpetrate a crime punishable with death. Express malice aforethought is where one person kills another with a sedate, deliberate mind and formed design, which formed design may be manifested in many ways; as, for instance, by lying in wait for the deceased, or by antecedent menaces or threats that disclose a purpose on the part of the prisoner to commit the act charged, or by a former grudge, ill-will, spite, hatred, or malevolence towards the deceased, or any other circumstances which disclose the purpose or intention of the accused toward his victim at the time when the crime was committed. The deliberate selection and use of a deadly weapon is a circumstance which, in the absence of satisfactory evidence to the contrary, indicates the existence in the mind of the person committing the act of a deliberate formed design to kill.

If the jury are satisfied from the evidence that the prisoner, when he killed the deceased, deliberately intended so to do, the length of time that said intention existed is immaterial, and the killing under such circumstances would be murder. If a design or intention to take life be but the conception of a moment, it is sufficient. If the slayer had time for thought and thinking but for a moment, did intend to kill, and in fact did kill, it is just the same in legal contemplation as if he had intended it for a length of time, and killing under such circumstances is held to be both deliberate and premeditated.

In order, therefore, to find a verdict of murder of the first degree, you must be satisfied that the prisoner killed the deceased with express malice aforethought, that is, with a sedate, deliberate mind and formed design to kill.

Murder of the second degree is where the crime is committed with implied malice; that is, where the malice is not express, as in murder of the first degree, but is an inference or conclusion of law from facts actually proved. It is where there is no deliberate mind or formed design to take life, but where the killing was done without justification or excuse and without provocation or without sufficient provocation to reduce the offense to manslaughter. For example, where the killing was committed without design and premeditation, but under the influence of a wicked and depraved heart, or with a cruel and wicked indifference to human life, the law implies malice and makes the offense murder of the second degree.

In order, to find a verdict of murder of the second degree, you must be satisfied that the prisoner killed the deceased with implied malice.

Malice, however, is implied by law from every unlawful and cruel act committed by one person against another, however sudden that may be; for the law considers that he who does an unlawful and cruel act voluntarily, does it maliciously. If death ensues from an unlawful and cruel act of violence on the part of the slayer, in the absence of adequate or sufficient provocation, the law implies that such act was done maliciously, and the crime is murder of the second degree.

Charge.

Therefore murder of the second degree is held to be proved where it is not satisfactorily shown by the evidence submitted to the jury, that the killing was done with a deliberately formed design to take life, or in perpetrating or attempting to perpetrate any crime punishable with death, but where it is shown that it was done suddenly, without justification or excuse, and without any provocation, or without provocation sufficient to reduce the homocide to the grade of manslaughter.

Where the killing is shown to have been done with a deadly weapon, such as a pistol, it is presumed to have been done maliciously, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused, for the usual and probable consequences of the act are presumed in law to have been intended by the person using the deadly weapon. If death is produced by the use of a deadly weapon, great must be the provocation to reduce the killing from murder to manslaughter

Manslaughter is where one person unlawfully kills another without malice. For example, where one in a sudden affray, in the heat of blood, or in a transport of passion, inflicts the mortal wound, without time for reflection or for the passions to cool. In order to reduce the crime to manslaughter the provocation must be very great—so great as to produce such a transport of passion as to render the person for the time being deaf to the voice of reason. While murder proceeds from a wicked and depraved spirit and is characterized by malice, manslaughter results not from malice but from unpremeditated and unreflecting passion.

If the slayer who had received the provocation from the other, or who had received the blow from the other, had time for his blood to cool, and for the heat of passion, which amounts to a frenzy in which reason is presumed in law to be unseated for the time being, to subside, and for his reason to regain its sway, then it it would not be manslaughter, but murder of either the first or second degree according to the circumstances. If the killing, however, is done during the continuance of the unseating of reason, without time for reflection or for the passions to cool, the crime is reduced to manslaughter.

We have been asked to charge you with reference to the law of self-defense. And we will say to you that no looks or gestures, however insulting, no words, however opprobrious or offensive, can amount to a provocation sufficient to excuse or justify even a slight assault. Nor can a slight assault excuse the killing of an assailant with a deadly weapon, so as to reduce the offense from the grade of murder to that of manslaughter. The most usual instance of manslaughter is where two persons are engaged in a fight and one kills the other in the heat of passion. The burden of establishing self-defense to the satisfaction of the jury rests upon the accused. In repelling or resisting an assault, no more force may be used than is necessary for the purpose, and if the person assailed use in his defense greater force than is necessary he becomes the aggressor.

If the deceased first attacked the accused, even though the attack was of such a character as to create in the mind of the accused a reasonable belief that he was in danger of death or great bodily harm, it was his duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power to avoid killing his assailant. No one may take the life of another, even in self-defense, unless there is no other available means of escape, from death or great bodily harm. If one is attacked, and from the character of such attack he has reasonable cause to believe, and does believe, that he is in imminent danger of death or great bodily harm, and he has no other reasonable means of avoiding or preventing death or great bodily harm, then the killing would be a justifiable act of self-defense. If, on the other hand, the attack was of a trifling character, and manifested no purpose or intention on the part of the assailant to inflict any serious injury, the repelling of such attack by the use of a weapon likely to produce death would not be an act of justifiable self-defense.

In ascertaining whether the accused was in any danger of injury at the hands of the deceased when he fired the shot, and, if in such danger, whether he took the proper precautions to avoid such danger, the jury should consider the facts and circumstances of the case as disclosed by the witnesses. In order to

justify or excuse the accused in firing the shot, it is not sufficient that he at the time believed himself to be in danger of death or great bodily harm at the hands of the deceased; but the circumstances must have been such, in the judgment of the jury, as to justify a reasonable man in such belief, and, further, that there was no reasonable way of avoiding or escaping from such danger except by slaying the assailant.

If you believe there was any provocation that caused the prisoner to fire the fatal shot, then you must consider whether such provocation was caused or provoked by the deceased or some one else. If such provocation was not caused by the deceased but wholly by another, then such provocation cannot reduce the crime from murder to manslaughter, and the jury should not consider such provocation in determining the grade of the crime unless the deceased was present and assisting, aiding or abetting him who caused the provocation.

The degree of credit due to a confession is to be estimated by the jury under the circumstances of the particular case. The whole of what the accused said on the subject at the time of making the confession should be taken together. The jury may believe that part which criminates the accused and reject that which is in his favor, or credit so much as is in his favor and discard that which is against him, if they see sufficient grounds, upon all the evidence, for so doing; for the jury are at liberty to judge of it, like any other evidence, from all the proven circumstances of the case.

The good character of an accused person, when proved, is to be taken in connection with all the other evidence in the case, and is to be given just such weight under all the facts and circumstances of the case as in the judgment of the jury it is entitled to.

When the testimony is conflicting the jury should endeavor to reconcile it, if it is possible to do so. If it is not possible to reconcile it, they should give credit to that testimony which they consider most worthy of their belief.

It would seem hardly necessary to remind a jury of your intelligence, character, and apparent fairness that you are to determine this case upon the evidence which you have heard from

the witnesses and the law as the Court has stated it, and upon nothing else. You are acting under your oaths, as we are under ours. The prisoner is entitled to, and should receive, a fair and impartial trial, just the same as any other person charged with the commission of crime. And so, we say that in reaching your verdict you are not to be influenced or governed by anything other than the law and the evidence.

In every criminal prosecution the defendant is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt. In order to convict the prisoner it is incumbent upon the State to prove beyond a reasonable doubt every material ingredient of the crime charged. If, after carefully and conscientiously considering and weighing all the evidence in the case, you should entertain a reasonable doubt of the guilt of the prisoner, you should give him the benefit of such doubt and your verdict should be not guilty. But such a doubt must not be a mere fanciful, vague, speculative or possible doubt, but a reasonable, substantial doubt remaining in your minds after a careful consideration of all the evidence; and such a doubt as reasonable, fair-minded and conscientious men would entertain under all the facts and circumstances of the case as shown by the evidence.

Now, gentlemen, if you should believe from the evidence that the prisoner killed William Kidd with express malice aforethought —that is, with a sedate, deliberate mind and formed design to kill, your verdict should be guilty in manner and form as he stands indicted; namely, of murder of the first degree. If you should believe that the defendant killed the deceased, not with express malice, but with implied malice; that is, not with a deliberate mind and formed design to kill, but with a wicked and depraved heart and with a cruel and reckless indifference to human life, your verdict should be guilty of murder of the second degree. If you should believe that the defendant killed the deceased unlawfully, but without malice, express or implied, your verdict should be guilty of manslaughter.

Verdict—Motion for New Trial.

If you should not be satisfied beyond a reasonable doubt that the defendant killed William Kidd maliciously or unlawfully, your verdict should be not guilty.

*Mr. Wales:*—Will your Honors call attention to the fact that the statement alleged to have been made by this defendant was not a confession but was an oral statement, was not made under oath, and could not have been a confession.

PENNEWILL, C. J.:—We will simply say to you, gentlemen of the jury, that in considering any statement made by the prisoner, you are to give it such weight as you think it is entitled to, under all the facts and circumstances of this case.

Verdict guilty.

(Counsel for defendant thereupon filed motions for a new trial and in arrest of judgment. Argument was heard by the Court on March 7th, and after holding the matter under advisement until March 15th, the following opinion was rendered):

PENNEWILL, C. J., delivering the opinion of the Court:

The Court have carefully considered the reasons assigned for a new trial in the above stated case, as well as the arguments of counsel in support of and against the motion.

The motion for arrest of judgment, we understand, has been abandoned, and no argument was made thereon.

· We are prepared to render a decision upon the motion for a new trial, and think it proper to give the reasons briefly for our conclusion.

It is alleged (1) that the defendant did not have sufficient time and opportunity in which to fully and fairly prepare for trial, and secure the attendance of witnesses in his behalf. As to this reason it is only necessary to say, that at the time of the prisoner's arraignment, his counsel, who had been assigned by the Court, was asked how much time he would require to prepare for the trial. He requested two weeks, and although the Attorney-General insisted upon a shorter period, the Court granted the request of the prisoner's counsel, and two weeks were allowed.

(2)   That a continuance of the case on the ground of the absence of a material witness, Filippo Di Rosario, was improperly refused by the Court, whereby the defendant suffered injustice. We say in reply to this reason, that the prisoner's counsel stated to the Court, before the commencement of the trial, that he had not been able to ascertain where the said witness was, and did not know that he would be able to learn of his whereabouts if the case should be continued to the next term.   While counsel did informally ask that the case might be continued, such continuance was not insisted upon, and no formal or legal application was made therefor.   Indeed it is impossible to see how any legal grounds could have been laid, because counsel had not seen the witness, nor had he talked with any one who had seen him since the assault was committed.   He has not in fact yet seen the witness or learned where he is, and could not therefore know what would be the nature of his testimony if his attendance could be secured.   Counsel frankly said to the Court that he had no assurance that he would be able to secure the attendance of the witness at any time.

(3)   That the verdict rendered by the jury was plainly due to a misapprehension of the Court's instructions, particularly as regards the finding by the jury of express malice aforethought on the part of the defendant, that is, a sedate, deliberate and formed design to kill.   It might be sufficient to say in respect to this reason, that there has been no evidence whatever submitted to the Court showing or tending to show that the jury did not clearly understand the instructions given.   We cannot assume they did not understand, and in the absence of any evidence to the contrary we must assume they did, and especially may we do so because the jury did not ask the Court for any further instructions, or indicate in any way that they did not fully and clearly comprehend the entire charge.   We are satisfied that the jury was composed of exceptionally capable and intelligent men, and are sure that the Court did everything in their power to clearly explain to them not only the legal import and meaning of "express malice aforethought," but also every other term or thing that was necessary or proper to be explained in the trial of

one indicted for murder of the first degree. The Court not only gave the usual charge, in the language uniformly employed by our Courts respecting express malice, implied malice, uncontrollable passion, reasonable doubt, and other important matters, but substantially and succinctly repeated such instruction at the close of the charge so that the jury ·could not fail to understand. We may say further that counsel for the prisoner requested the Court to charge the jury upon the points mentioned in certain language, and finding that his prayers correctly stated the law we charged substantially, if not in the exact language he asked the Court to employ.

(4) That it clearly appeared during the trial of the case that perjury was committed by a majority of the eye witnesses called and examined on behalf of the State, whose testimony was an important factor in producing the verdict.

We notice this ground only to say that no evidence whatever was adduced to support it, and it cannot therefore impress the Court in the slightest degree. In the absence of any evidence to sustain the charge it would be just as reasonable and proper to assume that the witnesses for the defense who contradicted those for the State were themselves open to the same charge. But there is nothing before the Court to show that the witnesses on either side were guilty of perjury in giving their testimony at the trial.

(5) The remaining reasons will be grouped and considered together, for they are of a general character, and have been partially covered by what we have already said. They are substantially as follows:

That the verdict was not in accord with substantial justice, and so gross as to shock the conscience of the Court. That the evidence adduced at the trial was insufficient to sustain a verdict of murder of the first degree, sufficient testimony being produced on behalf of the defendant to create a reasonable doubt of express malice aforethought on the part of the accused. That the verdict was the result of undue sympathy for the deceased and of prejudice towards the defendant as the outgrowth of a strong prevailing public sentiment. That the public welfare did not

reasonably require the defendant to be unduly hurried in the preparation of his defense, or the ordinary and usual course of administration of justice to be interrupted.

It was the duty of the Court to instruct the jury in respect to the law applicable to the case. This was done as fully and clearly as we were able to do, and we have no doubt the jury understood the charge they received. With the evidence in the case the Court could not, and cannot, have anything to do under the provisions of the Constitution of the State. The weight and effect of the evidence, as well as the credibility of the witnesses, were matters solely and exclusively for the consideration and determination of the jury, and there can be no reason for holding that their verdict was not in accord with substantial justice, or so gross as to shock the conscience of the Court.

While it would be improper for the Court to express any opinion upon the verdict rendered by the jury, we do say that no defendant charged with a serious crime could have had a fairer or more impartial trial. While there was a special convening of the grand jury under a recent statute which provided for a notice of six days instead of twenty days as previously required, the Court took the precaution, which perhaps was not necessary, to say to the grand jury that they should not be affected by the fact that they were called together in special session, but it was their duty to consider and determine any matters that might be presented to them just as though they were met in usual and regular session.

Ample time was given the defendant, after the indictment was found, to prepare his defense. This case was not exceptional in the time allowed the defendant to prepare for his trial, because other defendants charged with a similar crime have been allowed no longer time.

There is absolutely nothing presented to the Court to show that the verdict of the jury was the result of sympathy for the deceased or of prejudice towards the defendant, or that it was influenced by public clamor in any degree.

Although it may have been entirely unnecessary, and prob-
ably was, nevertheless the Court did, near the close of their
charge, caution the jury in the following words:

'It would seem hardly necessary to remind a jury of your
intelligence, character and apparent fairness that you are to
determine this case upon the evidence which you have heard
from the witnesses, and the law as the Court have stated it, and
upon nothing else. You are acting under your oaths, as we are
under ours. The prisoner is entitled to, and should receive, a
fair and impartial trial, just the same as any other person charged
with the commission of crime. And so we say that in reaching
your verdict you are not to be influenced or governed by any-
thing other than the law and the evidence.''

In conclusion we will say that in our opinion every right of
the defendant, constitutional or otherwise, was fully safe-guarded
at his trial. He was ably defended by competent counsel as-
signed by the Court. He was given the right to compel the at-
tendance of witnesses in his defense at the expense of the County.
Practically every ruling upon the admissibility of testimony was
in the prisoner's favor, and there was no exception entered to the
charge of the Court. The jury, as is well known, was composed
of representative, intelligent and conscientious men, and when
the case was closed and submitted to them for their decision they
returned their verdict, not hastily, but after remaining out all
night, and presumably, after many hours of careful consideration
and thought.

The motion for a new trial is overruled.

*Mr. Gray:*—May I ask that sentence be passed upon the
prisoner.

PENNEWILL, C. J.:—(through a sworn interpreter) Carmine
Russo, stand up.

Carmine Russo, you were indicted by the grand jury of this
County for murder of the first degree.

Upon that indictment you had a fair and impartial trial.
Your counsel, with great zeal and fidelity, presented to the Court
and jury every fact and argument which in his judgment were
available for your defense. The jury, nevertheless, rendered a

. verdict of guilty; and it therefore becomes the solemn duty of this Court to pronounce the sentence of the law upon you for the commission of the heinous crime for which you were indicted.

Have you anything to say why the Court should not now pronounce the sentence of the law upon you.

*The Prisoner* (through the interpreter):— I have nothing to say.

PENNEWILL, C. J.:—The sentence of the law, as considered by the Court, is that you, Carmine Russo, be now taken from the bar of this Court to the New Castle County Workhouse, the public prison of this county, the place from which you came, and be there safely and securely kept in custody until Friday, the seventeenth day of June, in the year of our Lord, nineteen hundred and ten, and on that day, between the hours of ten o'clock in the morning and three o'clock in the afternoon, you be taken to some convenient place of private execution within the precincts of said prison enclosure and that you be then and there hanged by the neck until you be dead; and may God have mercy on your soul.

You are now committed to the custody of the Board of Trustees of the New Castle County Workhouse. until this sentence is carried into execution.